***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. No party is appearing in a representative capacity and there are no other potential parties to this proceeding.
2. Compensability has been admitted in this case.
3. Plaintiff has been paid total disability compensation through January 4, 2009, based upon an alleged average weekly wage of $581.68.
4. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2);
 b. Correspondence to Plaintiff from Defendant with Attachments dated January 15, 2003, which was admitted into the record and marked as Stipulated Exhibit (3) and;
 c. At the Hearing before the Deputy Commissioner and on the Record, it was indicated that subsequent to the hearing, the parties were to submit a Packet of Industrial Commission Forms, including an Industrial Commission Form 22 Wage Chart, however, the parties have since submitted two (2) pages of wage information, which was admitted into the record and marked as Stipulated Exhibit (4). No Industrial Commission Forms are part of the record.
 ***********
As set forth in Deputy Commissioner Houser's February 23, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES *Page 3 
1. What is Plaintiff's correct average weekly wage?
2. To what amount of permanent partial disability compensation, if any, is Plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. An employer-employee relationship existed between Plaintiff-Employee and Defendant-Employer at all relevant times.
2. On April 11, 1999, the date of the injury by accident at issue, Defendant-Employer was self-insured with Corvel Corporation serving as the servicing agent.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at the time of the injury by accident, Defendant-Employer employing the requisite number of employees to be bound under the provisions of the Act.
4. As of the hearing date before the Deputy Commissioner, Plaintiff was forty-three (43) years of age with his date of birth being April 22, 1967.
5. On April 11, 1999, Plaintiff was employed by Defendant-Employer as a correctional sergeant. On that date, Plaintiff sustained an admittedly compensable injury by accident involving his left knee. Specifically, Plaintiff injured his left knee in a twisting movement while chasing an inmate.
6. Subsequent to his admittedly compensable injury by accident, Plaintiff initially returned to work for Defendant-Employer in a light-duty capacity. However, Plaintiff was unable *Page 4 
to continue working for Defendant-Employer, even in a light-duty capacity, because his physical restrictions could not be accommodated.
7. Defendant-Employer paid Plaintiff his full salary through May 11, 2001.
8. For his left knee condition, Plaintiff initially received treatment from Dr. James M. Watson, an orthopedic surgeon. Based upon an MRI and his examination, Dr. Watson diagnosed Plaintiff as having an old anterior cruciate ligament tear, as well as a torn posterior horn of the medial meniscus. On May 11, 1999, Plaintiff underwent a left knee arthroscopic procedure which was performed by Dr. Watson.
9. Because Plaintiff continued to experience pain and instability in his left knee, he sought additional treatment from Dr. John J. Schaffer, also an orthopedic surgeon. Dr. Schaffer ultimately performed two surgeries on Plaintiff, the first being a left knee anterior cruciate ligament reconstruction procedure on August 24, 1999, and the second being a left knee orthopedic meniscectomy and resection procedure on July 11, 2001.
10. Because Plaintiff was unable to continue working for Defendant-Employer Plaintiff enrolled in college on a full time basis to become a teacher. Plaintiff graduated from this program and on January 5, 2009, began working as a teacher in Elizabeth City. Upon returning to work as a teacher, Plaintiff earned wages equal to or greater than his pre-injury wages.
11. After Defendant-Employer ceased paying Plaintiff his regular full salary, Defendant paid Plaintiff total disability compensation for the period of July 2, 2001, to January 4, 2009. These payments were based upon an average weekly wage of $581.68, which resulted in a compensation rate of $387.81.
12. Defendant filed an Industrial Form 28 Return to Work Report on January 6, 2009, and an Industrial Commission Form 28B on January 9, 2009. *Page 5 
13. On February 2, 2002, Dr. Schaffer opined that Plaintiff had reached maximum medical improvement, and assigned a twenty-one percent (21%) permanent partial disability rating to his left knee. Additionally, Dr. Schaffer recommended permanent restrictions for Plaintiff of no lifting more than twenty (20) pounds as well as no squatting or kneeling.
14. Regarding the amount of permanent partial disability compensation Plaintiff may be entitled to, he reached maximum medical improvement on February 19, 2002, with a twenty-one percent (21%) permanent partial disability rating to his left leg. For this rating, Plaintiff would, under other circumstances, be entitled to recover forty-two (42) weeks of permanent partial disability compensation at the rate of $387.81 per week, for a total of $16,288.02 pursuant to N.C. Gen. Stat. § 97-31(15). However, pursuant to N.C. Gen. Stat. § 97-29, Defendant paid to Plaintiff approximately $141,162.84 in total disability compensation subsequent to February 19, 2002. Therefore, against the amount of permanent partial disability compensation Defendant would owe to Plaintiff, Defendant is entitled to a credit in the amount of $16,288.02, resulting in Plaintiff being entitled to and receiving no compensation pursuant to N.C. Gen. Stat. § 97-31(15).
15. Based upon the totality of the credible evidence of record, the Full Commission finds that on April 11, 1999, plaintiff's average weekly wage was $581.68, which yields a compensation rate of $387.81.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 11, 1999, Plaintiff sustained an admittedly compensable injury by accident involving his left knee. N.C. Gen. Stat. § 97-2(6). *Page 6 
2. Based upon the totality of the credible evidence of record, the Full Commission concludes that on April 11, 1999, Plaintiff's average weekly wage was $581.68, which yields a compensation rate of $387.81. N.C. Gen. Stat. § 97-2(5).
3. The coordination of compensation available under the Act was explained in Arnold v. Wal-Mart Stores, Inc.,154 N.C. App. 482, 571 S.E.2d 888 (2002), wherein the Court of Appeals explained, "[i]f an employee has a scheduled injury under N.C. Gen. Stat. § 97-31 and a loss of wage-earning capacity, the employee may elect to seek benefits under whichever section will provide the more favorable remedy. Id. This election does not allow for an employee to recover from both methods simultaneously.Farley v. N.C. Dep't of Labor,146 N.C. App. 584, 587, 553 S.E.2d 231, 233 (2001); N.C. Gen. Stat. § 97-31." The Court of Appeals went on to further state that:
 However, an employee who has suffered an injury listed in N.C. Gen. Stat. § 97-31 and suffers a partial or total loss of wage-earning capacity during the "healing period" may seek (1) compensation for loss of wage-earning capacity under N.C. Gen. Stat. § 9-29 or N.C. Gen. Stat. § 97-30 during the "healing period" and (2) compensation for the specific listed injury for the statutorily prescribed period of time under N.C. Gen. Stat. § 97-31 once the "healing period" has ended. Knight, 149 N.C. App. at 12, 562 S.E.2d at 442. The end of the healing period determines the beginning of statutory compensation under N.C. Gen. Stat. § 97-31. The ending of the healing period under N.C. Gen. Stat. § 97-31 is "when the injury has stabilized, referred to as the point of `maximum medical improvement' (or `maximum improvement' or `maximum recovery')" ("MMI"). Id.
See also Knight v. Wal-Mart Stores, Inc.,149 N.C. App. 1, 562 S.E.2d 434 (2002), disc. review denied,355 N.C. 749, 565 S.E.2d 667 (2002); Gupton v. BuildersTransport, 320 N.C. 38, 357 S.E.2d 674 (1987) (Stacking of benefits prohibited, employee entitled to select the more generous benefits under N.C. Gen. Stat. §§ 97-29 and 97-30 or N.C. Gen. Stat. § 97-31. *Page 7 
4. Against the amount of permanent partial disability compensation Defendant would owe to Plaintiff, Defendant is entitled to a credit in the amount of $16,288.02, resulting in Plaintiff being entitled to and receiving no compensation pursuant to N.C. Gen. Stat. §§ 97-31(15); 97-29; Gupton v. BuildersTransport, 320 N.C. 38, 357 S.E.2d 674 (1987).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff is not due any further compensation pursuant to N.C. Gen. Stat. § 97-31(15).
2. Each side shall pay their own costs.
This the 26th day of August, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ STACI T. MEYER COMMISSIONER
 S/_____________ PAMELA T. YOUNG CHAIR *Page 1